CAUSE NO. 2013-30379-211

| | | |
|---|---|---|
| FUNimation ENTERTAINMENT, Plaintiff | § § § | IN THE DISTRICT COURT OF |
| v. | § § | DENTON COUNTY, TEXAS |
| SC FILMS INTERNATIONAL, INC.; MATTHEW JOYNES, Individually; and NICHOLAS LYON, Individually | § § § § | |
| Defendants | § § | 211 7th JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL VERIFIED PETITION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND ORDER COMPELLING ARBITRATION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, FUNIMATION ENTERTAINMENT ("FUNimation"), Plaintiff, filing Plaintiff's Original Petition and Application for Ex Parte Temporary Restraining Order, Preliminary Injunction, and Order Compelling Arbitration, complaining of and against SC FILMS INTERNATIONAL, INC.; MATTHEW JOYNES, Individually; and NICHOLAS LYON, Individually.

### I. DISCOVERY CONTROL PLAN

1. Discovery is intended to be conducted under Level 2 of the Texas Rules of Civil Procedure.

### II. PARTIES

2. Plaintiff FUNimation Entertainment is an assumed name of FUNimation Productions, Ltd., a domestic limited partnership residing at 1200 Lakeside Parkway, Flower Mound, Texas 75028.

**EXHIBIT 9**

3.  Defendant SC FILMS INTERNATIONAL, INC. is a Delaware corporation doing business in the State of California, whose certificate of authority was forfeited due to the resignation of its registered agent for service of process, National Corporation Research, Ltd. and who does not maintain a registered agent for service of process in the State of Delaware or the State of California. Defendant SC FILMS INTERNATIONAL, INC. may be served with process by serving the Delaware Secretary of State, pursuant to 8 Del. C. §§ 136(c) and 321, because SC FILMS INTERNATIONAL, INC. has not designated or maintained a resident agent for service of process in Delaware, as required by statute. 8 Del. C. § 136(c). The last known certain address of its Director, Matthew Joynes, is SC Films International, Inc., 1801 Century Park East, Suite 2400, Los Angeles, California 90067.

4.  Defendant MATTHEW JOYNES is a natural person residing in the State of California. Defendant may be served at his business address, SC Films International, Inc., 1801 Century Park East, Suite 2400, Los Angeles, California 90067, or wherever he may be found.

5.  Defendant NICHOLAS LYON is a natural person residing in the State of California. Defendant may be served at his business address, 1116 N. Vista, West Hollywood, California 90046, or wherever he may be found.

### III. JURISDICTION

6.  This Court has subject matter jurisdiction over this dispute. The amount in dispute exceeds the jurisdictional limits of this Court.

7.  This Court has personal jurisdiction over SC Films because it consented to personal jurisdiction in Texas in a valid forum selection clause and is a member of a Texas Limited Liability Company.



{HD048107.1}

2

APP-00027

8. This Court has personal jurisdiction over Defendants Matthew Joynes and Nicholas Lyon because they have purposely availed themselves of the benefits of the laws of the State of Texas and should foresee being haled into Court here.

## IV. VENUE

9. Venue of this action lies in Denton County, Texas because all or a substantial number of the events giving rise to this action occurred in Denton County, Texas.

## V. SPECIFIC FACTUAL ALLEGATIONS

10. On September 2, 2012, non-party American United Media, LLC ("AUM"), Defendant SC Films International, Inc. ("SC Films"), and Defendant Nicholas Lyon ("Lyon") executed an agreement entitled "Bullet Term Sheet" (the "Memorandum") for the purpose of "developing, producing, completing, and delivering" a motion picture entitled "Bullet" (the "Motion Picture"). The Motion Picture was to be based on a script written by Lyon, Byron Lester, and Ron Peer. (Memorandum at 1.)

11. The Memorandum sets forth the basic framework for the development of the Motion Picture and defines in general terms the parameters of the parties' agreement with respect to the same. Among other things, the Memorandum contemplates that Lyon, as writer and producer of the Motion Picture, would provide director services for the film, and would relinquish and assign all of his title and rights to the script and Motion Picture. (Memorandum ¶ 5.) In exchange, AUM, FUNimation, and SC Films would fund production of the Motion Picture and acquire certain exclusive rights to distribute and otherwise exploit the Motion Picture domestically and abroad. (*Id.* ¶¶ 3, 7.)

12. Subsequently to execution of the Memorandum, AUM assigned some of its rights thereunder to Plaintiff FUNimation ENTERTAINMENT ("FUNimation"). (Deal Memo.)



13. Following the AUM's assignment of its rights to Plaintiff FUNimation, FUNimation and Defendant SC Films created a Texas LLC known as Bullet Film Production Company, LLC (the "LLC"), a special entity created for purposes of "hold[ing] all rights for production of the film." (Memorandum at 1.)

14. In January 2013, Plaintiff FUNimation, Defendant SC Films, and third party assignor AUM (collectively, the "Members"), executed an Operating Agreement, which defines more specifically the general terms of the Memorandum and, together with other subsequently executed agreements, defines the respective rights and obligations of each party to the agreement with respect to all aspects of the Motion Picture. (Operating Agreement.)

15. The Operating Agreement expressly "acknowledge[s] the Memorandum" and further provides that such Memorandum is "subject to the terms of [the Operating] Agreement, the terms of any subsequent agreements entered into by the [LLC] with respect to the [Motion] Picture, and any further changes the [LLC] may determine in consultation with, and, where necessary, approval by, other stakeholders." (Operating Agreement ¶¶ 3.3 and 3.3(c).)

16. Among other things, the Operating Agreement provides that each Member is to acquire a specific percentage and net revenue interest in the LLC. Based on the specific interests assigned and other specific provisions of the Agreement, each Member is entitled to receive certain revenue distributions from the LLC based on income generated from distribution and general exploitation of the Motion Picture. Receipt of any distributions under the Operating Agreement, however, is contingent upon and predicated on fulfillment of all Member obligations, including required capital contributions from each Member.

17. The parties' cooperation and fulfillment of their obligations is essential to the success of the Motion Picture.



18. FUNimation holds a majority ownership in the LLC and the title of Manager under the Operating Agreement, pursuant to which FUNimation has "sole and exclusive control of the management and operation of the business and affairs of the [LLC] to the full extent of the powers, rights and authority granted under [the] law," and further "shall make all creative and business judgments, determinations and decisions regarding the business of the [LLC]." (Operating Agreement ¶ 8.1.)

19. Defendants' conduct is interfering with FUNimation's rights in the Motion Picture and the LLC. In particular, the timing of completing and releasing the Motion Picture dictates to a large extent its performance. Defendants' conduct has delayed unreasonably the completion of the Motion Picture. More troublingly, Defendants are engaging in conduct that threatens to cloud the title to the Motion Picture. This could hinder or altogether prevent it from being distributed in the future.

20. FUNimation has complied with all of its duties, and has made all required capital contributions to the LLC for production of the Motion Picture.

21. SC Films and its CEO, Matthew Joynes, have interfered and continue to interfere with FUNimation's exclusive rights to direct the affairs of the LLC by failing to cooperate to bring about the successful completion of the Motion Picture, by threatening and disparaging FUNimation and its principals, by directing third parties not to do business with FUNimation, by repudiating their agreements and by calling into question the ownership and control of the Motion Picture.

22. SC Films also has not contributed costs necessary to complete the Motion Picture.

23. Before the parties carried out any funding or production activities for the Motion Picture, FUNimation, as Manager of the LLC, ensured that Lyon executed all necessary documents for



assignment of such rights. Specifically, in January 2013, Lyon and the LLC executed an Agreement to Sell Literary Rights and an Assignment of Copyright and Intellectual Property Rights under which Lyon:

- represented to be the producer, creator, writer, author, and sole and exclusive owner of "all rights (including all rights of copyright), title and interest of every kind and nature in and to" the Motion Picture's "scripts, treatments, outlines, notes and related materials" (the "Works");

- agreed to "sell, assign, transfer, convey, and deliver to [the LLC] . . . [his] entire right, title, and interest in, to, and under the Works" and "waive[] all moral rights in and to the Works;" and

- agreed to provide the LLC with any instruments or documents necessary to "facilitate registration of any filings" or to record the transfer made in any public office.

(Assig. of Copyright and Intellectual Prop. Rights ¶¶ 1-2, 4 ("Copyright Assignment").)

24. Defendant Lyon has repudiated the Copyright Assignment and improperly attempted to exercise rights over the Motion Picture that he does not hold. He has called into question the ownership and control of the Motion Picture.

25. Lyon's rights are strictly limited and are defined in the Director Agreement under which Lyon agreed to furnish the services of director for the Motion Picture. (Director Agreement ¶ 2.) Lyon specifically agreed in the Director Agreement that:

- "his" contributions in the performance of his duties as director were only as "work made for hire;"

- the "[LLC] shall be deemed to be the 'author' and own all rights in and to such services;"



- he would "assign[] and transfer to [the LLC], exclusively and perpetually, throughout the universe, all now or hereafter rights of every kind and character . . . in and to all results and proceeds of [his] services . . . and agrees that no right of any kind, nature or description is reserved to" him;

- he would "expressly grant[] to [the LLC] all rights of every kind and character in and to any of the materials which [he] may perform, write, suggest, create, direct or produce in connection with the Picture;" and

- he would "expressly waive any rights or droit moral or similar rights that may be afforded [to him] under the laws of any country either as an author, director, producer or in any other capacity connected with the [Motion] Picture."

(Director Agreement ¶ 5.)

26. Despite the clear import of such representations and agreements, Lyon is now threatening to rescind the Agreement to Sell Literary Rights and the Copyright Assignment, all of which have placed a cloud on the LLC's title to the Works and significantly jeopardized the successful release and distribution of the Motion Picture.

27. The Operating Agreement commits the parties to arbitration in Texas to resolve disputes arising in connection with the Agreement. The disputes underlying this request for injunctive relief and all claims potentially raised by the Defendants are committed to arbitration.

28. Both Texas and federal law allow the parties to obtain equitable relief pending the resolution of their dispute through arbitration.

## VI. REQUEST FOR TEMPORARY RESTRAINING ORDER

29. Plaintiff incorporates the foregoing allegations as if fully set forth herein.



30. This request is not *ex parte*. Service of process has been effected upon Defendant SC Films through the Secretary of State of Delaware. Service of process has been effected or attempted personally upon individual defendants Matthew Joynes and Nicholas Lyon <u>and</u> both Mr. Joynes and Mr. Lyon have been sent courtesy copies of this pleading via email.

31. Defendants have shown no regard whatsoever for the contract or property rights of FUNimation or for Texas law, which applies at a minimum to all rights and duties associated with the LLC and with the Bullet film project. The Operating Agreement provides that Texas law shall apply to each Member of the LLC, including SC Films, as if it were a Texas resident and with the understanding that the Agreement is made and performed in Texas. (Operating Agreement ¶ 15.5.)

32. Absent the requested relief, Defendants will continue to infringe upon FUNimation's rights and to violate the law. But for the immediate intervention of this Court, FUNimation will continue to be injured by the acts of Defendants. FUNimation accordingly requests that this Court immediately issue a temporary restraining order:

(a) Declaring that pending resolution of the substantive disputes between the parties in arbitration, the Memorandum, Assignment Agreement, Operating Agreement, Agreement to Sell Literary Rights, Copyright Assignment and Director Agreement remain valid and binding upon the parties thereto;

(b) Enjoining all parties from interfering with FUNimation's rights in the LLC and/or the Motion Picture;

(c) Enjoining all parties from initiating litigation in contravention of the Agreement to Arbitrate;

(d) Awarding to Plaintiff its cost of this suit, including reasonable attorneys' fees; and

  (e)  Granting such other relief as the Court deems just and proper.

33. Such evidence in support of the Temporary Restraining Order includes, but is not limited to, the facts stated herein, the Verification and Affidavit of Chris Moujaes, and the exhibits attached thereto.

34. FUNimation has no adequate remedy at law and cannot prevent the imminent and irreparable harm that may occur unless Defendants are immediately restrained as requested herein. If Defendants continue to interfere with FUNimation's rights, FUNimation may suffer irreparable harm for which no adequate legal remedy exists. The damage to FUNimation if the film is delayed or precluded from reaching the intended market are extremely difficult to measure. The film is a unique asset and constitutes both real property (masters and physical manifestations) and virtual, intellectual property. The potential value of such an asset is highly variable.

35. The requested temporary restraining order will establish the last peaceable status quo, which is properly the status quo before SC Films and the individual defendants repudiated and breached the parties' agreements. The requested order also will maintain the status quo by preventing the LLC's title and rights to the film from becoming clouded, thereby harming irreparably all parties concerned.

36. To the extent that the requested temporary restraining order will require affirmative acts by Defendants, such acts would impose a minimal burden on Defendants and would be essential to prevent irreparable harm to Plaintiff and to others while this matter is pending.

37. The parties have agreed to subject the merits of their dispute to arbitration.

38. Texas law recognizes that it is proper for a court to enter injunctive relief to preserve the status quo pending the conclusion of arbitration. Such orders are necessary to preserve the



parties' negotiated and contracted-for rights to arbitration, pursuant to and guarded by the Texas and Federal Arbitration Acts. The law in favor of arbitration is so strong that the element of "success on the merits" is relaxed when the merits of a dispute are committed to arbitration.

39. The requested temporary restraining order is in the public interest.

## VII. REQUEST FOR PRELIMINARY INJUNCTION

40. Plaintiff reincorporates the foregoing allegations as though fully set forth herein.

41. The relief that Plaintiff requests in its Request for Temporary Restraining Order is immediate. In the event that the Court grants or denies such relief, Plaintiff requests that the Court set a hearing on this application for a Temporary Injunction to preserve and protect the status quo and issue an order directing Defendants to appear at such hearing. At that hearing, Defendants should show cause, if any, why this Court should not enter an injunction providing the relief requested herein.

42. FUNimation has no adequate remedy at law and cannot prevent the irreparable harm or damage that may occur unless Defendants are immediately restrained as requested in this application.

## VIII. BOND

43. Because Defendants will suffer no injury even if it is later established that this injunctive relief was entered in error, no bond is warranted. The requested relief asks only that Defendants comply with their current contractual promises and not violate the law.

## IX. REQUEST FOR ORDER COMPELLING ARBITRATION

44. The Operating Agreement to which FUNimation and SC Films are signatories provides that:

> *Any* dispute, controversy or claim arising out of or in connection with or relating to this Agreement or any breach or alleged breach hereof *shall* be determined and



> settled ... by arbitration in Galveston County, Texas, pursuant to the rules then in effect of the American Arbitration Association, and any such determination or settlement shall be enforceable pursuant to the laws of the State of Texas.

(Op. Agmt. 15.6 (emphasis added).)

45. The Federal Arbitration Act ("FAA") applies because the parties' dispute involves interstate commerce.

46. The parties' dispute falls within the scope of the arbitration provision.

47. The arbitration provision binds nonsignatory defendants Matthew Joynes and Nicholas Lyon under the direct benefits estoppel doctrine.

48. FUNimation is entitled to an order compelling Defendants to arbitrate their dispute with FUNimation in Texas and enjoining them from seeking judicial resolution in any forum.

## X. ATTORNEYS' FEES

49. Section 15.10 of the Operating Agreement provides that the "party prevailing in any dispute between or among the Members and Manager regarding Company matters in which litigation results shall be entitled to recover from the other party all reasonable expenses, including, without limitation, court costs and reasonable attorneys' fees."

50. FUNimation is entitled to be reimbursed by SC Films for the costs of bringing this action for injunctive relief, including reasonable attorneys' fees.

## XI. PRAYER

51. WHEREFORE PREMISES CONSIDERED, FUNimation requests that Defendants be cited to appear and that FUNimation obtains a temporary restraining order consistent with the above-stated allegations. FUNimation further requests that Defendants be required



Respectfully submitted,

JONES WALKER LLP

By: _____
LAUREN J. HARRISON
State Bar No. 24025840
1001 Fannin, Suite 2450
Houston, Texas 77002
713.437.1858
713.437.1810 (facsimile)
Email: lharrison@joneswalker.com

**ATTORNEYS FOR PLAINTIFF**

CERTIFIED A TRUE AND CORRECT COPY
OF THE ORIGINAL ON FILE IN MY OFFICE

SHERRI ADELSTEIN
DENTON COUNTY DISTRICT CLERK

5-30-13   By: _____
Date                Deputy Clerk