**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| FUNIMATION ENTERTAINMENT, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Case No. 4:13-cv-329 |
| | § | |
| SC FILMS INTERNATIONAL, INC., | § | |
| MATTHEW JOYNES, and NICHOLAS | § | |
| LYONS, | § | |
| *Defendants.* | § | |

## REPORT AND RECOMMENDATION OF UNITED STATES
## <u>MAGISTRATE JUDGE</u>

Now before the Court is Plaintiff's Motion for Preliminary Injunction (Dkt. 19) and

Defendants' Motion to Dismiss (Dkt. 12). The Court finds that the Plaintiff's Motion (Dkt. 19)

should be GRANTED, that Defendants' Motion (Dkt. 12) should be DENIED, and that the

parties should be compelled to arbitration.

### BACKGROUND

Plaintiff FUNimation Entertainment is a Texas film production and distribution company.

Defendant SC Films International, Inc. is a Delaware film sales company with its principal place

of business in California. SC Films is headed by individual Defendant Matthew Joynes, a

California resident. Defendant Nicholas Lyon, also a California resident, is the author and

director of the film "Bullett."

FUNimation, SC Films, and non-party American United Media (AUM), entered into an

agreement to form a Texas limited liability company, Bullett Production Company LLC, for the

purpose of developing and producing the film, "Bullett". The terms of their agreement are

memorialized in an Operating Agreement (Dkt. 19-5). The Operating Agreement contains an

arbitration clause[1] and a merger clause.[2] The Operating Agreement specifies that Texas law will govern its interpretation and that any resulting arbitration will take place in Galveston, Texas. During the production of the film, several disputes arose between the parties. Plaintiff filed this suit in Texas state court in Denton County as an action to compel arbitration and sought a preliminary injunction to preserve the status quo between the parties until arbitration could be completed. The state court granted the Plaintiff's request for a temporary restraining order and scheduled a hearing on Plaintiff's request for a preliminary injunction. The parties entered into a Rule 11 agreement to reschedule the preliminary injunction hearing, and Defendants agreed to abide by the terms of the temporary restraining order until then. Before the hearing took place, Defendants removed the case to this Court. Defendants moved this Court to dissolve the temporary restraining order on June 14, 2013 (Dkt. 3). However, temporary restraining order expired by its own terms fourteen days after its issuance on May 28, 2013. *See* Dkt. 8. Plaintiff filed its motion for preliminary injunction (Dkt. 19) on September 3, 2013, and the Court held an evidentiary hearing on the motion on September 12, 2013.

---

[1] Paragraph 15.6 of the agreement states that "Any dispute, controversy or claim arising out of or in connection with or relating to this Agreement or any breach or alleged breach hereof shall be determined and settled (to the extent not prohibited by governing law) by arbitration in Galveston County, Texas, pursuant to the rules then in effect of the American Arbitration Association, and any such determination or settlement shall be enforceable pursuant to the laws of the State of Texas. Any award rendered shall be final and conclusive upon the parties, and a judgment thereon may be entered in the highest court of the forum (state or federal) having jurisdiction. An arbitrator shall be selected according to the procedure provided for under the Commercial Arbitration Rules of the American Arbitration Association."

[2] Paragraph 15.11 of the agreement makes clear that the "Agreement, including any schedules, contains all representations of the entire understanding an agreement between the parties as of the date hereof, and cannot be modified, supplemented or amended except by a written instrument executed by the parties hereto. All prior negotiations, statements and agreements, oral or written, are replaced by this Agreement, unless expressly stated otherwise, other than the terms set forth in the applicable Membership Unit Offering Subscription Agreement."

**LEGAL STANDARD**

**A.  MOTION TO COMPEL ARBITRATION**

The Federal Arbitration Act (FAA) "is a congressional declaration of liberal policy favoring arbitration."[3] Under the Act, "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[4] "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."[5]

In determining whether a suit should be compelled to arbitration, the court must first determine "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute falls within the scope of that arbitration agreement."[6] "When deciding whether parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles governing formation of contracts."[7] Once an agreement is committed to arbitration, substantive attacks on the validity of the contract are to be resolved by the arbitrator, and not by the court.[8]

When a party to an arbitration agreement brings suit against a party that did not join in the arbitration agreement, as has happened here with individual Defendant Lyon, the court must

---

[3] *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

[4] 9 U.S.C. § 2 (2006); *Nitro-Lift Techs., L.L.C. v. Howard*, 133 S. Ct. 500, 503 (2012).

[5] 9 U.S.C. § 4 (2006).

[6] *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003) (internal quotation marks omitted).

[7] *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (noting that "Courts should not assume that the parties agreed to arbitrate abitrability unless there is 'clear and unmistakable evidence that they did so'").

[8] *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006).

determine whether the non-signatories may invoke the arbitration agreement. To determine which non-signatory parties may invoke an arbitration agreement, the doctrine of equitable estoppel applies to prevent a signatory from asserting a non-signatory's liability in connection with a contract without also affording it the benefit of the contract's arbitration provision.[9] Equitable estoppel may allow a non-signatory to invoke an arbitration agreement in two circumstances:

> First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the non-signatory. When each of a signatory's claims against a non-signatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate. Second, application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the signatory and one or more of the signatories of the contract. Otherwise, the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.[10]

Because the signatories to arbitration agreements have already agreed in writing to arbitration of claims relating to the agreement, it is foreseeable, and therefore reasonable, to broaden the scope of the arbitration agreement when signatories bring related claims against non-signatories.[11] Further, direct-benefits estoppel can be the basis for compelling a non-signatory to arbitrate with a signatory when the non-signatory "knowingly exploits the agreement containing the arbitration clause."[12] "Courts have compelled arbitration involving nonsignatories under the following

---

[9] *Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 268 (5th Cir. 2004).

[10] *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000) (quoting *M.S. Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)).

[11] *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 361 (5th Cir. 2003).

[12] *Id.* at 362; *see also In re Weekley Homes, L.P.*, 180 S.W.3d 127, 132 (Tex. 2005) ("In some cases, a nonparty may be compelled to arbitrate if it deliberately seeks and obtains substantial benefits from the contract itself.").

contract and agency principles: (a) incorporation by reference; (b) assumption; (c) agency; (d) veilpiercing/alter ego; (e) estoppel; and (f) third-party beneficiary."[13]

### B. PRELIMINARY INJUNCTION

To obtain a preliminary injunction, the applicant must show (1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) that his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) that granting the preliminary injunction will not disserve the public interest.[14] The party seeking an injunction carries the burden of persuasion on all four requirements.[15] Under Rule 65, "[e]very order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail . . . the act or acts sought to be restrained."[16]

### ANALYSIS

The Court holds that Plaintiff has laid sufficient grounds to entitle them to a preliminary injunction to prevent any further interference by Defendants in the completion of the film "Bullett". Plaintiff has made a sufficient showing that there is a substantial likelihood that they will succeed on the merits of their claim to compel arbitration under the Operating Agreement. Defendants concede that there is a valid agreement to arbitrate between the parties and that they are not asserting any claims of fraud against Plaintiff in relation to the arbitration clause.[17] While

---

[13] *Wood v. PennTex Res., L.P.*, 458 F. Supp. 2d 355, 365 (S.D. Tex. 2006) *aff'd sub nom. Wood v. Penntex Res. LP.*, 322 F. App'x 410 (5th Cir. 2009) (citing *Bridas*, 345 F.3d at 356; *In re FirstMerit Bank, N.A.,* 52 S.W.3d 749 (Tex.2001)).
[14] *PCI Transp., Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005); *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 195 (5th Cir. 2003).
[15] *Lake Charles Diesel*, 328 F.3d at 196.
[16] FED. R. CIV. P. 65(d).
[17] *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006) (holding that "regardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator").

there is some dispute over the final terms of the agreement, "[u]nless a defense relates specifically to the arbitration agreement, it must be submitted to the arbitrator as part of the underlying dispute."[18] The evidence put forth by the parties shows that Individual Defendant Nicholas Lyon has exploited the agreement containing the arbitration clause by entering into a contract with the LLC regarding his service as director of the film "Bullett"[19] and therefore can also be compelled to arbitration in this matter. Individual Defendant Matthew Joynes can be compelled to arbitration as an agent of SC Films, International.

Not only does this resolve the issue of Plaintiff's likelihood of success on the merits with regard to a preliminary injunction, it also resolves the issues raised in Defendants' Motion to Dismiss (Dkt. 12). In their motion, Defendants first argue that Plaintiff's claim should be dismissed for improper venue. But a hearing and proceedings under an arbitration agreement "shall be within the district in which the petition for an order directing such arbitration is filed."[20] In this instance, the petition was filed in Texas state court in Denton County, Texas, and this Court is the proper court for removal.[21] Second, Defendants argue that Plaintiff has failed to state a plausible claim for relief and seek dismissal or alternatively, an order for a more definite statement. However, Plaintiff has sufficiently stated a claim to compel the underlying disputes between the parties to arbitration, and Defendants do not dispute the validity of the arbitration clause. Plaintiff has not sought any decision on the merits of the underlying disputes.[22] Accordingly, the Court holds that Plaintiff has demonstrated a substantial likelihood of success

---

[18] *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214-15 (5th Cir. 2003) (internal quotation marks omitted).
[19] Dkt.19-6.
[20] 9 U.S.C. § 4 (2006).
[21] 28 U.S.C. § 1441 (2006).
[22] *See In re Mirant Corp.*, 613 F.3d 584, 589 (5th Cir. 2010) ("A party waives arbitration by seeking a decision on the merits before attempting to arbitrate.") (internal quotation marks omitted).

on the merits for the purpose of obtaining a preliminary injunction and that Defendants' Motion to Dismiss (Dkt. 12) should be denied.

Next, Plaintiff has shown that immediate and irreparable harm may result if Defendants are not enjoined from interfering with or disrupting Plaintiff's business. The damage to Plaintiff's business before arbitration is complete by Defendants' actions in interfering with production of the film would leave Plaintiff with no adequate remedy at law. If the film "Bullett" is not completed and delivered on schedule, Plaintiff will lose business and good will, which are immeasurable through money damages. Finally, the Court finds that the threatened injury to Plaintiff outweighs any potential harm to Defendants, and that the entry of a preliminary injunction will not disserve the public interest.

Referral of this matter to arbitration does not prevent the Court from issuing injunctive relief. The Federal Arbitration Act does not preclude a court from issuing injunctive relief, including a preliminary injunction, to preserve the status quo during the process of arbitration, where the contract at issue reflects a consensus of the parties that such relief was contemplated.[23] "The congressional desire to enforce arbitration agreements would frequently be frustrated if the courts were precluded from issuing preliminary injunctive relief to preserve the status quo pending arbitration and, *ipso facto,* the meaningfulness of the arbitration process."[24] The Court finds that the arbitration provision here contemplates injunctive relief and that an injunction will preserve the status quo during the pendency of the arbitration. [25]

---

[23] *RGI, Inc. v. Tucker & Assocs., Inc.*, 858 F.2d 227, 230 (5th Cir.1988); *Ruscitto v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 777 F. Supp. 1349, 1353 (N.D. Tex. 1991).

[24] *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011).

[25] Defendants have argued that paragraph 15.17 of the Operating Agreement is evidence that Plaintiff agreed not to seek injunctive relief in the event of a breach of the terms of the Operating Agreement. Paragraph 15.17 says that "The parties agree and acknowledge that in the event of a breach by any party of any obligation hereunder, the damage caused any other party shall not be irreparable or otherwise so sufficient as to give rise to a right of injunctive or other equitable

Defendants, SC Films International, Inc., Matthew Joynes, and Nicholas Lyon, and all other persons in active concert or participation with them, are hereby restrained and enjoined immediately from, directly or indirectly:

1. Taking an actions or measures to interfere with Bullett LLC's Operating Agreement; and

2. From making, providing, or distributing a version of "Bullett", the movie.

Finally, the Court directs the parties to proceed to arbitration in this matter through the American Arbitration Association. The Court notes that the Plaintiff has not yet filed a claim for arbitration with the American Arbitration Association. Plaintiff has fourteen days from the date of this Report to file a claim for arbitration and pay the arbitration fee, during which time this preliminary injunction shall remain in place. Should Plaintiff fail to file a claim for arbitration by that time, the preliminary injunction will be lifted. The arbitration shall take place in Galveston, Texas, in accordance with the terms of the parties' agreement unless otherwise negotiated and agreed-to by the parties.

RECOMMENDATION

Based upon the foregoing, the Court recommends that Defendants' Motion to Dismiss (Dkt. 12) be DENIED, and that Plaintiff's Motion for Preliminary Injunction (Dkt. 19) be GRANTED. Plaintiff's claims against the Defendants should be compelled to arbitration.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

---

relief, and the parties hereto acknowledge that their rights and remedies in the event of any such breach shall be limited to the right, if any, to recover damages in an action at law and shall not include the right to enjoin the development, financing, production, Distribution Activities or other exploitation of the Motion Picture hereunder." Plaintiff is not seeking injunctive relief to enjoin development of the film. In fact, they are seeking to enjoin Defendants' actions in interfering with the development of the film. Therefore, paragraph 15.17 does not prevent the Court from entering a preliminary injunction pending arbitration.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 13th day of September, 2013.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE